IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01644-WYD-CBS

JOSHUA M. JUNEVICUS,
    Plaintiff,
v.

DEPARTMENT OF VETERANS AFFAIRS,
HEALTH ADMINISTRATION CENTER, and
ERIC SHINSEKI, Secretary of Veteran's Affairs[1],
    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Craig B. Shaffer

    This civil action is before the court on Defendant Shinseki's "Motion for Summary Judgment and Supporting Brief" (filed June 17, 2011) (Doc. # 32) pursuant to Fed. R. Civ. P. 56(a). Pursuant to the Order of Reference dated July 26, 2010 (Doc. # 5) and the memorandum dated June 17, 2011 (Doc. # 33), this matter was referred to the Magistrate Judge. The court has reviewed Defendant's Motion for Summary Judgment, Mr. Junevicus' "Response to Motion for Summary Judgment and Supporting Brief" ("Response") (filed July 8, 2011) (Doc. #36), Defendant's "Reply to the Plaintiff's Response to Motion for Summary Judgment" ("Reply") (filed August 2, 2011) (Doc. # 41), the pleadings, the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.

---

[1] Pursuant to 42 U.S.C. § 2000e-16(c), the head of the department or agency is the proper defendant in a Title VII case. Therefore, Eric Shinseki, Secretary of the Department of Veteran's Affairs, is the only proper defendant in this case. *Johnson v. United States Postal Service*, 861 F.2d 1475, 1477-78 (10th Cir. 1989). The Department of Veterans' Affairs and the Health Administration Center are improper parties who must be dismissed.

### I. Statement of the Case

Plaintiff, Joshua Junevicus initiated this civil action *pro se* with the filing of his Complaint in the District Court, City and County of Denver, State of Colorado on June 18, 2010. (*See* Complaint (Doc. # 2)). Defendant, pursuant to 28 U.S.C. § 1441, filed a Notice of Removal in the United States District Court for the District of Colorado on July 12, 2010. (Doc. #1) Mr. Junevicus filed his Amended Complaint and Jury Demand on October 22, 2010. (Doc. #15). In the sole claim of his Amended Complaint, Mr. Junevicus alleges that he was terminated from employment with the Department of Veteran's Affairs Health Administration Center ("HAC") because of his gender, unrelated to his job performance. While Mr. Junevicus' Amended Complaint states no jurisdictional basis, Title VII provides the necessary waiver of sovereign immunity. 42 U.S.C. § 2000e(16) (2006). Mr. Junevicus also leaves his exact legal theory unclear, referencing several legal terms in his pleadings, including "hostile work environment," and "retaliation." However, it appears based on the Amended Complaint, and Response to the Motion for Summary Judgment, that the actual claim is one of wrongful termination of employment based on reverse gender discrimination. (*See* Amended Complaint (Doc. #15 at 2 of 4); *see also* Response (Doc. # 36 at pp.2-3 of 21)).

Defendant Shinseki has moved pursuant to Fed. R. Civ. P. 56(a) for summary judgment on Mr. Junevicus' sole claim for relief. Defendant argues that 1) Mr. Junevicus cannot establish a prima facie case of discrimination; 2) even if such a case were shown, Defendant presented legitimate, non-discriminatory reasons for Mr. Junevicus' termination; and 3) Mr. Junevicus has not established that Defendant's stated reasons are a pretext for discrimination.

## II.     Material Facts[2]

Mr. Junevicus was employed in the student program at HAC from June 3, 2007 through January 31, 2009 as an administrative assistant to Division Chief Harold Bailey. (*See* Doc. #33 Ex. A-1 at 2-3 of 29). Mr. Junevicus was forced to resign from this position when management discovered that he was no longer a qualified student. (*See id.* at 3 of 29). On March 3, 2009, Mr. Junevicus was rehired by Harold Bailey as a Customer Contact Representative at HAC, a position that required a one year probationary employment period. The primary duty of a Customer Contact Representative is to take incoming calls from individuals with questions about Veterans Affairs health benefits. (*See id.* at 4, 7 of 29).

Upon his rehiring, Mr. Junevicus was required to attend a training class with approximately 11 other new employees. (*See id.* at 4 of 29). During this initial training class in March and April of 2009, Mr. Junevicus received first a verbal, and later a written reprimand from trainer Janice Martin for violating HAC policy prohibiting personal e-mail and internet usage. (*See* Doc. #33 Ex. A-2 at 3 of 8; s*ee also* Ex. A-1 at 13 of 29).

On April 8, 2009, while still attending the training class, Mr. Junevicus called HAC supervisor, Isabelle Saunders, to advise her that he would not arrive for his scheduled 7:30 a.m. shift until 9:00 a.m. Mr. Junevicus did not arrive until approximately 12:00 p.m. (*See* Doc. #33 Ex. A-1 at 14 of 29). HAC supervisor, Devin Cummings, subsequently issued a written

---

[2]Mr. Junevicus has failed to admit or deny, in corresponding numbered paragraphs, any material facts set forth in Defendant's Motion for Summary Judgment. Accordingly, Defendant argues those facts should be deemed admitted. (*See* Reply (Doc. #41 at 1)). Because Mr. Junevicus appears *pro se* this court will construe his Response "liberally." Even under this liberal standard, and looking beyond the lack of numbered paragraphs, with the exception of paragraph number 18, Mr. Junevicus does not admit or deny any material facts set forth by Defendant. Therefore, with the exception of the facts proffered in paragraph number 18, the court deems admitted and adopts Defendant's Material Facts.

memorandum to Mr. Junevicus stating that he would be charged four hours Absent Without Leave ("AWOL"). (*See id.* at 16 of 29). The memorandum further reprimanded Mr. Junevicus for failing to communicate to management that he would not arrive by 9:00 a.m., and for disrupting the training class with non-business related use of the internet and email. (*See id.*). Mr. Junevicus completed the training class on May 16, 2009, and began working in the HAC. Rodney Jones attended the same training class as Mr. Junevicus, and upon completion was promoted to be Mr. Junevicus' immediate supervisor. (*See id.* at 9 of 29).

Internet usage at HAC is monitored by HAC management, and on July 16, 2009 Rodney Jones issued Mr. Junevicus a written counseling memorandum for violating HAC policy by excessively utilizing the internet for personal reasons. (*See id.* at 18-26 of 29). On July 17, 2010 Rodney Jones issued Mr. Junevicus a second written counseling memorandum for setting his computer status to "personal time" while not on break. (*See id.* at 27 of 29). On August 5, 2010 Rodney Jones issued yet another written counseling memorandum to Mr. Junevicus for violation of HAC's absence and leave policy. (*See id.* at 28-29 of 29). HAC management monitors Customer Contact Representatives' time entries via a computer monitoring system; this system recorded eight separate violations by Mr. Junevicus between May 26, 2010 and August 4, 2010. (*Id.*)

On September 4, 2010 Mr. Junevicus was logged into his computer from 12:15 p.m. to 1:15 p.m. but was not at his work station, resulting in Mr. Junevicus again being charged as AWOL. (*See* Doc #33 Ex. A-3 at 5-6 of 7; *see also* Ex. A-7). On October 1, 2010 HAC supervisor Devin Cummings observed Mr. Junevicus visiting non-work related internet sites and communicated this information to Mr. Junevicus' immediate supervisor, Rodney Jones. (*See* Doc. #33 Ex. A-8).

On October 30, 2010, pursuant to a request from Divisional Chief Harold Bailey, Mr. Junevicus' probationary employment with HAC was terminated. (Doc. #33 Ex. A-6). Denise Sandoval, Chief of Human Resources, issued Mr. Junevicus a termination memorandum outlining five separate reasons for termination: 1) improper use of the internet on October 1, 2010; 2) AWOL on September 28, 2009; 3) unauthorized extension of breaks and lunch consistently from May 21, 2010 to August 4, 2010; 4) inappropriate use of personal time and disrespectful conduct towards a supervisor on June 10, 2010; 5) AWOL on April 8, 2010; and 6) failure to follow instructions during training course. (*See id.* at 3-6 of 7).

### III. Analysis

#### A. Motion for Summary Judgment Standard of Review

> Summary judgment is proper under Fed. R. Civ. P. 56(c) when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In applying the standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non-moving party. To defeat a properly supported motion for summary judgment, there must be evidence upon which the jury could reasonably find for the plaintiff. Judgment as a matter of law is improper unless the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ as to the conclusion. Speculation, supposition and unsupported factual allegations will not establish an issue of material fact necessitating trial.

*Lee v. Bd. of County Comm'rs of Arapahoe County, Colo.*, 18 F. Supp.2d 1143, 1156 (D. Colo. 1998) (internal quotation marks and citations omitted).

Mr. Junevicus appears *pro se*, therefore, the court must "review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007). However, as the non-moving party responding to a summary judgment motion, Mr. Junevicus retains the burden of identifying

5

specific facts, through affidavits, depositions, or exhibits, from which a rational trier of fact could find in his favor. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

### B.  Title VII Claims

The Supreme Court established a three part test for Title VII claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1998). First, the complainant has the initial burden of establishing a prima facie case of gender discrimination. *Id.* The burden then shifts to the employer to articulate a legitimate, nondiscriminatory purpose for the termination. *Id.* If the employer articulates a legitimate purpose, the plaintiff must then demonstrate that the employer's stated reason for termination was in fact a pretext. *Id.* at 804.

#### 1.  Prima Facie Case of Discrimination

To establish a prima facie case under *McDonnell Douglas*, the plaintiff must show that he: 1) belongs to a protected class; 2) was qualified for the job he held; 3) was terminated despite his qualifications; and 4) that after his termination, the position was filled by someone of similar qualifications. *Gera v. Hasbro*, 1999 WL 1012300 at *3 (D.R.I. 1999) (citing *McDonnell Douglas* as applicable in an employment termination context).

Mr. Junevicus is a white male and therefore not a member of a protected class under 42 U.S.C. §2000e. Because he is not a member of a traditionally disfavored group, Mr. Junevicus' accusations are not entitled to the presumption of invidious intent created by establishing a prima facie case under *McDonnell Douglas*. *Adamson v. Multi-Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1149 (10th Cir. 2008) (citation omitted). Therefore, Mr. Junevicus can only satisfy the first prong of the *McDonnell Douglas* test by showing, "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992). Mr. Junevicus can

demonstrate such background circumstances by producing statistical evidence of Defendant's adverse treatment of male employees. *See Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1201 (10th Cir. 2006). Alternatively, Mr. Junevicus can establish background circumstances by demonstrating that the Defendant refused to hire or promote male employees, or that other male employees faced similar discriminatory action. *See id.*; *see also Mitchell v. City of Wichita*, 140 Fed. Appx. 767, 781 (10th Cir. 2005).

Mr. Junevicus' evidence fails to establish such background circumstances. HAC hires male employees and Mr. Junevicus concedes that another male employee from his own training class received a promotion. (*See* Amended Complaint (Doc. #15 at 2 of 4.)). There is a factual dispute over how many employees have been terminated by Defendant (*See* Plaintiff's Response (Doc. #36) ("Defendant has terminated 4 male employees and 1 female employee."). *But see* Defendant's Motion for Summary Judgment (Doc. #33 at ¶18) (from 2007-2009 HAC terminated 11 probationary employees, 5 of whom were female)). A showing that male employees were terminated for like infractions at a significantly higher rate than female employees would give rise to a discriminatory inference. However, Mr. Junevicus undercuts this inference by conceding that he is "the only male employee terminated for a non-privacy violation." (Plaintiff's Response (Doc. #41)).

Mr. Junevicus also seeks to establish background circumstances by stating that Defendant did not take action against female employees who engaged in behavior similar to that for which he was terminated. (*See* Plaintiff's Response (Doc. #36 at 2 of 21). This contention fails to establish background circumstances for two reasons. First, the only evidence offered in support of this contention is an email exchange between Mr. Junevicus and a female employee purporting to show that the female employee was also violating HAC's email policy. (*See id.*

7

Ex. E-1). Second, Defendant does not contend that Mr. Junevicus' employment was terminated for any single infraction, but instead that the cumulative effect of multiple infractions made him unsuitable for continued employment. (*See* Doc. #33 at 7 of 9; *see also* Doc. #33, Ex. A-6 at 3-6 of 7). Because Mr. Junevicus cannot establish background circumstances, he fails to satisfy the first prong of the *McDonnell Douglas* prima facie test.

The Tenth Circuit has endorsed an alternative method for establishing a prima facie case outside the *McDonnell Douglas* framework. *See Notari*, 971 F.2d at 590. Under this alternative test, Mr. Junevicus can demonstrate a prima facie case by presenting "direct evidence of discrimination or by indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for plaintiff's [gender], he would not have been terminated." *Id.* at 590 (citing *Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir. 1986) (en banc). The *Notari* court was clear in stating, "[t]he approach we announce today does not displace the *McDonnell Douglas* paradigm but simply provides an alternative basis upon which plaintiffs may satisfy their prima facie burden." *Id.* at 591.

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 380 (2d Cir. 2003)). Here, Mr. Junevicus' pleadings are replete with allegations, but he fails to present any evidence that absent his status as a male he would not have been terminated. Mr. Junevicus has not provided any oral or written statements establishing or even suggesting discriminatory motive on the part of Defendant, and has put forward no other direct evidence of this alleged motive. *See Stover v. Martinez*, 382 F.3d 1064, 1075 (10th Cir 2004) ("Actions brought under Title VII alleging racial

discrimination may be supported with direct evidence, e.g., a defendant's oral statements demonstrating her discriminatory motivation."). While Mr. Junevicus may believe that his termination was the result of discrimination, the court cannot consider as evidence his conclusory accusations. *See Gera*, 1999 WL 1012300 at *5 ("A subjective belief in discrimination, however genuine, cannot alone be the basis for judicial relief."). Further, Mr. Junevicus' accusations that female employees engaged in similar behavior without facing termination does nothing to bolster his argument. Even if the court were to accept this unsupported assertion as fact, it still fails to demonstrate that but for his status as a man he would not have been terminated. *See Adamson*, 514 F.3d at 1151 ("It is not enough, however, for a plaintiff merely to allege that he was a qualified man who was treated differently than a similarly situated woman.").

In short, Mr. Junevicus fails to demonstrate a prima facie case under any of the available tests, therefore, his claim fails at the starting line. Mr. Junevicus has not put forward any evidence of background circumstances to demonstrate that Defendant is one of those rare employers who discriminates against the majority, nor has he provided evidence that but for his status as a male he would not have been terminated. In construing the facts in the light most favorable to non-moving party, Mr. Junevicus' claims do not establish a prima facie case under either the *McDonnell Douglas* test, or under the alternative test articulated in *Notari*.

### 2. Employer's Non-discriminatory Reason

Even if the court were to find that Mr. Junevicus established a prima facie case, this does not end the inquiry. Once a plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's termination.

*McDonnell Douglas*, 411 U.S. at 802.  Here, Defendant meets this burden by articulating six specific grounds that cumulatively formed the reason for Mr. Junevicus' termination: 1) use of internet for personal reasons; 2) AWOL on September 28, 2009; 3) unauthorized extension of breaks and lunch; 4) inappropriate use of personal time and disrespectful conduct towards supervisor; 5) AWOL on April 8, 2009; and 6) failure to follow instructions.  (Memorandum from Chief, Human Resources to Joshua Junevicus (October 30, 2009) (Doc. #33 Ex. A-6 at 3-4 of 7)).

The above stated reasons are supported by written counseling memoranda issued to Mr. Junevicus during his employment with HAC.  (*See* Motion for Summary Judgment, (Doc. #33, Ex. A-1 at 16, 18, 27, 28 )).  Defendant has stated legitimate, non-discriminatory reasons for termination, thereby shifting the burden to Mr. Junevicus to demonstrate that these stated reasons are a pretext for Defendant's discriminatory motives.  *See McDonnell Douglas*, 411 U.S. at 802.

### 3. Demonstrating Pretext

"A plaintiff may establish pretext by showing that the employer's proffered reason for acting adversely towards him is unworthy of belief."  *Adamson*, 514 F.3d at 1146.  Mr. Junevicus need not show that unlawful intent was the sole motivating factor, but instead that it was either a determining factor, or that the "proffered reasons were so incoherent, weak, inconsistent, or contradictory that a rational fact-finder could conclude the reasons were unworthy of belief."  *Stover*, 382 F.3d at 1076.

Here, Defendant has presented substantial evidence detailing Mr. Junevicus' numerous violations of HAC policy.  (*See* Doc #33, Ex. A-1 at 13 of 29 (email from Martin to Junevicus regarding violation of email/internet policy); at 16 of 29 (memorandum from Cummings to

Junevicus regarding AWOL and violations of email/internet policy); at 18-25 of 29 (memorandum from Jones to Junevicus regarding violation of internet policy and User Internet Browse Time Detail Report); at 27 of 29 (written counseling from Jones to Junevicus regarding inappropriate use of personal time and disrespect towards supervisor); at 28-29 of 29 (written counseling from Jones to Junevicus regarding tardiness in returning from breaks and lunch)).

Mr. Junevicus concedes that the disciplinary counseling he received for being AWOL on September 28, 2009 was "done appropriately," and that other employees who missed work were also charged as AWOL. (Doc. #33 Ex. A-1 at 14-15 of 29). Mr. Junevicus also admits to all other violations of HAC policy referenced in the termination memorandum, but alleges that female employees committed similar infractions without facing disciplinary action. Mr. Junevicus argues that this alleged inconsistency demonstrates pretext. However, the evidence in the record clearly contradicts Mr. Junevicus' contention. Defendant has provided disciplinary action to female employees for violation of HAC internet and email policies and for abuse of personal time. (*See* Doc. #33 Ex. A-4 at 5, 8-10 of 13). Similarly other HAC employees were charged AWOL time for being logged into their computers while absent from their desks. (*See* Doc. #33, Ex. A-3 at 6-7 of 7). Additionally, in the disciplinary counseling memorandum issued to Mr. Junevicus for taking extended lunch breaks, Defendant recounts nine separate violations of the HAC Absence and Leave Policy based on computerized records. (*See* Doc. #33, Ex. A-1 at 28-29 of 29). It is the cumulative nature of these violations, and Mr. Junevicus' failure to change his behavior in light of ongoing disciplinary counseling, that Defendant puts forth as its legitimate reason for terminating Mr. Junevicus. (*See* Doc. #33, Ex. A-5 at 4 of 6). Mr. Junevicus fails to produce any evidence, direct or circumstantial, that demonstrates that Defendant's proffered reasons are incoherent, inconsistent, or unworthy of belief.

11

Mr. Junevicus' previous employment with the same employer, under the same Divisional Chief further hinders his pretext argument. "Other evidence that may be relevant to any showing of pretext includes facts as to the petitioner's treatment of respondent during his prior term of employment." *McDonnell Douglas*, 411 U.S. at 804. Mr. Junevicus worked for HAC, under the supervision of Harold Bailey from June 3, 2007 through January 31, 2009. (*See* Doc. #33, Ex. A-1 at 3 of 29). All evidence in the record indicates that during this employment period Mr. Junevicus made no accusations of discriminatory treatment. Mr. Junevicus was forced to resign from his initial position with the HAC as he was no longer eligible to work under the student program. (*Id.*). However, Mr. Junevicus was offered subsequent employment at HAC, because Divisional Chief Harold Bailey, sought to "give him a second chance." (Doc. #33, Ex. A-5 at 2 of 6).

Mr. Junevicus also seeks to demonstrate pretext by introducing the findings of the Colorado Department of Labor and Employment's "Hearing Officer's Decision." However, in doing so he misconstrues the meaning of the Hearing Officer's Decision, as well as the standard for summary judgment in this court. The purpose of the Labor and Employment Hearing was to determine whether Mr. Junevicus was entitled to unemployment benefits. Under Colorado law "disqualification [from receiving unemployment benefits] is proper only if there is, or could be, serious damage to the employer's interest," and the employee was separated through no "fault" of their own. (*See* Hearing Officer's Decision (quoting Colo. Rev. Stat. § 8-73-108(5)(e)(VII))) (Doc. # 36 at 6). However, in this context, "fault is not necessarily related to culpability, but only requires a volitional act or the exercise of some control or choice in the circumstances leading to the termination." *Id.* (quoting *Richards v. Winter Park Recreational Ass'n*, 919 P.2d 933, 934 (Colo. App. 1996))).

Based on this standard, Mr. Junevicus' success at the Labor and Employment Hearing demonstrates only that the reasons for his termination fall short of causing "serious damage to the employer's interest." *Id.*  However, in this action, Mr. Junevicus alleges wrongful termination based on reverse gender discrimination, and faces the burden of proving that Defendant's proffered reasons for termination are in fact a pretext to its discriminatory motives. The Labor and Employment Hearing did not address whether Mr. Junevicus' termination was "wrongful," nor were there any findings of discriminatory practices.  In short, the Hearing Officer's Decision has no bearing on this court's analysis because it addressed an issue completely unrelated and irrelevant to the issue presented here.

### IV.     Conclusion

Having reviewed all materials in the record and the arguments advanced by the parties, the court concludes that Defendant's Motion for Summary Judgment should be granted.  In construing all pleadings and documentary evidence in the light most favorable to the non-moving party, the court fails to find any genuine issues of material fact.  Thus, the Defendant is entitled to judgment as a matter of law.

Accordingly, IT IS RECOMMENDED that "Defendant's Motion for Summary Judgment" (filed June 17, 2011) (Doc. # 33) be GRANTED, and that judgment on the Amended Complaint (Doc. #15) be entered in favor of the Defendant and against the Plaintiff.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United State v. One Parcel of Real Property Known as 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see*, *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 7th day of October, 2011.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge